UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHEN WILSON,

                          Plaintiff,

            -against-

YONKERS PUBLIC SCHOOLS, et al.,

                          Defendants.

---

**OPINION & ORDER**

24-CV-00184 (PMH)

PHILIP M. HALPERN, United States District Judge:

Stephen Wilson ("Plaintiff") commenced this action on January 10, 2024 against Yonkers Public Schools ("YPS"), William Shaggura, and Dr. Edwin M. Quezada ("Defendants"). (Doc. 1). On June 10, 2024, Plaintiff filed a Second Amended Complaint, pressing claims for: (1) hostile work environment and disparate treatment on the basis of his race, national origin, and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) retaliation in violation of Title VII; (3) discrimination on the basis of race under 42 U.S.C. § 1983; (4) hostile work environment and disparate treatment on the basis of his race, national origin, and gender in violation of New York State Human Rights Law ("NYSHRL"); (5) retaliation in violation of NYSHRL; (6) discrimination on the basis of race in violation of 42 U.S.C. § 1981; and (7) retaliation in violation of 42 U.S.C. § 1981. (*See generally* Doc. 22, "SAC").

Pending before the Court is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 27; Doc. 28; Doc. 29, "Def. Br."). Plaintiff opposed Defendants' motion (Doc. 30, "Pl. Br."), and the motion was fully submitted with the filing of the reply (Doc. 31, "Reply").

For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion and draws them from the Second Amended Complaint. The Court assumes these facts to be true for the purpose of deciding this motion.

Plaintiff is an African American male of Jamaican origin. (SAC ¶ *16).[1] Since 2016, Plaintiff has worked as an ELA Teacher at Charles E. Gorton High School ("Gorton High School"). (*Id.* ¶ *19). Besides Plaintiff, the ELA department at Gorton High School was comprised of all White female teachers during the period described in the Second Amended Complaint. (*Id.* ¶ 2). Plaintiff alleges that he has suffered various forms of discrimination and retaliation on the basis of his race, gender, and national origin.

I.    2019-2020 School Year

During the 2019-2020 school year, Mr. Shaggura, the Principal at Gorton High School, assigned Plaintiff five class periods and two grade levels. (*Id.* ¶¶ *13, 4, 11). Plaintiff was also assigned the sole responsibility of "coverage management duties" and taught two college courses. (*Id.* ¶¶ 10, 84). The other teachers in the ELA department were assigned lighter class loads, including less class periods and only one grade level. (*Id.* ¶¶ 16-24, 30-34). No other teacher in the department was assigned to more than one college course. (*Id.* ¶ 84). The combined pressure from this workload caused Plaintiff "health complications." (*Id.* ¶ 14). Plaintiff, given these uneven work schedules, complained of "gender bias" to his Assistant Principal. (*Id.* ¶ 24).

Mr. Shaggura, during this period, also began denying Plaintiff "internship experience" offered to Plaintiff's female, non-Black colleagues. (*Id.* ¶¶ 37-43). Mr. Shaggura, through these

---

[1] Plaintiff restarted the paragraph numbering in the Second Amended Complaint after Paragraph 19. (*See* SAC at 4). For clarity, citations to the paragraphs before the renumbering will be identified with an asterisk.

acts, "stymied" Plaintiff's career "growth," reducing his chances of being promoted to an Assistant Principal position. (*Id.* ¶¶ 38, 43). As a result of his exclusion from the internship program, Plaintiff complained of gender bias in September 2019. (*Id.* ¶ 44).

II.    2020-2021 School Year

Plaintiff, for the 2020-2021 school year, was again assigned five class periods, two grade levels, and two college courses. (*Id.* ¶¶ 69, 108-109). As a result, and given his experience during the 2019-2020 school year, Plaintiff sent complaints around September, October, and November 2020 "to the District and Board outlining discrimination and retaliation." (*Id.* ¶¶ 54-55).

On February 24, 2021, Plaintiff met with Mr. Shaggura. (*Id.* ¶¶ 86, 89). During this meeting, Plaintiff "shared" "evidence" of race and gender bias. (*Id.* ¶¶ 86-90). Mr. Shaggura also promised during this meeting that Plaintiff would become the next Chair of the ELA Department. (*Id.* ¶ 86).

Mr. Shaggura, however, later backtracked from his promise, instead requiring Plaintiff to complete a survey for nomination to the next ELA Chair. (*Id.* ¶ 87). Plaintiff, in this survey, repeated his complaints about race and gender bias shared with Mr. Shaggura during their February 24, 2021 meeting. (*Id.* ¶¶ 88-90). Mr. Shaggura later met with and "chastise[d]" Plaintiff for his references to race and gender bias in his survey responses. (*Id.* ¶¶ 90-93). Ultimately, Plaintiff was not promoted to the ELA Chair position, denying him "opportunities for additional pay" as well as a "stepping stone" to further career advancement. (*Id.* ¶ 99). Plaintiff was also not promoted to the "Title I Executive Director" position, despite applying for it on February 5, 2021. (*Id.* ¶ 95).

Plaintiff, during this school year, also never received "school building training." (*Id.* ¶ 111). His non-Black colleagues received such training and then were promoted to Assistant Principal

positions. (*Id.*). Plaintiff, by contrast, was assigned to undesirable tasks, including covering student restrooms. (*Id.* ¶ 114).

Plaintiff, around the same period, often worked for "MBK"[2]—outside his normal classroom responsibilities—without compensation or reimbursement for related expenses. (*Id.* ¶¶ 104, 106). Plaintiff was also not compensated for other non-classroom work related to his position as a teacher at Groton High School. (*Id.* ¶ 106). By contrast, Plaintiff's female, non-Black colleagues were regularly compensated for similar work done outside the classroom. (*Id.* ¶ 105).

### III.    2021-2022 School Year

In May 2022, Plaintiff was denied a promotion to an Assistant Principal position. (*Id.* ¶ 124). Someone, that same year, placed a "racially demeaning image of a monkey" on Plaintiff's desk. (*Id.* ¶ 125). Plaintiff submitted a complaint about the image of the monkey to Superintendent Quezada. (*Id.* ¶ 126).

### IV.    2022-2023 School Year

Plaintiff experienced increased hostility during the 2022-2023 school year. For instance, YPS's "staff" sent Plaintiff four emails "containing disturbing and degrading gay pornography depicting Black men bearing [Plaintiff's] resemblance," prompting Plaintiff to report the matter to HR. (*Id.* ¶ 129). Plaintiff's teaching materials and personal items were also "discarded, stolen, or destroyed" by an unknown perpetrator. (*Id.* ¶ 130). These and prior acts caused Plaintiff to file an "Emergency Leave Benefit" application on May 8, 2022. (*Id.* ¶ 131).

---

[2] Plaintiff unhelpfully uses several acronyms throughout the Second Amended Complaint, such as "MBK," without providing a definition for the term. Based on context, "MBK" appears to be a reference to the "My Brothers Keepers" program. *See* Yonkers Public Schools, https://www.yonkerspublicschools.org/o/mbk/page/gorton-high-school (last visited Sept. 19, 2025).

He also filed an internal discrimination complaint against Superintendent Quezada the next day. (*Id.* ¶ 132). "Superintendent Quezada/HR" denied Plaintiff's "Emergency Leave Benefit" application. (*Id.* ¶ 133).

During this school year, Plaintiff was placed on involuntary leave in December 2022 and was informed that YPS had "stopped his paychecks" in May 2023. (*Id.* ¶ 139).

V.    2023-2024 School Year

In August 2023, Plaintiff received an email notifying him that he had been placed on unpaid sick leave from September 2023 to October 2023. (*Id.* ¶ 149). YPS relegated Plaintiff to this status despite Plaintiff, two months earlier, submitting a doctor's note that he was "cleared to return to work." (*Id.* ¶ 147). YPS staff then blocked Plaintiff from working when he reported to the school on the first day of classes, resulting in a loss of "insurance coverage" and pay for several months. (*Id.* ¶¶ 153-156).

After finally being allowed back to work at the end of October 2023, Plaintiff discovered that students had "routinely had intercourse" in his classroom during his absence. (*Id.* ¶ 159). Plaintiff was also physically attacked upon his return: a student "struck" him with a door in December 2023 and stated, "I hate black people." (*Id.* ¶ 161). Plaintiff reported the incident. (*Id.* ¶ 162). He also reported to Mr. Morales, who had taken over as Principal, about the "ongoing acts of discrimination, retaliation, and disparate treatment" at Gorton High School. (*Id.* ¶ 178). Neither the student that attacked Plaintiff nor anybody else was subject to disciplinary actions related to Plaintiff's complaints. (*Id.* ¶¶ 161-162).

As a result of "discriminatory practices and lack of advancement due to his race," Plaintiff filed a "notice of claim" in May 2023. (*Id.* ¶ 164). One month later, Plaintiff applied for the position of Director of MBK but was denied the position. (*Id.* ¶¶ 141-146, 165-168).

VI.    <u>DHR and EEOC Filings</u>

Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights ("DHR") dated October 19, 2021, and his charge with the United States Equal Employment Opportunity Commission ("EEOC") was filed around October 2021. (*Id.* ¶ 3; Doc. 28-2). Plaintiff received a Notice of Right to Sue from the EEOC dated October 18, 2023. (SAC ¶ *8; Doc. 22-1).

<strong><u>STANDARD OF REVIEW</u></strong>

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

I.   Section 1981 Claims for Relief

Defendants first argue that Plaintiff's sixth and seventh claims for relief must be dismissed because "§ 1983 constitutes the exclusive federal remedy for violations of the right guaranteed by § 1981." (Def. Br. at 11 (citation omitted)).[4] But courts in this District, when faced with similar pleadings, have repeatedly "construe[d] [] § 1981 claims as causes of action brought under § 1983 and discuss[ed] whether the claims can survive pursuant to § 1983 caselaw." *In re New York City Dep't of Educ.*, No. 15-CV-07150, 2019 WL 1433163, at *5 (S.D.N.Y. Mar. 29, 2019) (citing *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018)); *see also Royall v. City of Beacon*, No. 24-CV-00003, 2024 WL 4266546, at *10 (S.D.N.Y. Sept. 23, 2024) ("Accordingly, the Court considers Plaintiff's § 1981 claims under § 1983, as other courts [in this District] have done[.]" (collecting cases)).

The Court joins these other courts and will construe Plaintiff's sixth and seventh Section 1981 claims for relief as being brought under Section 1983. *See Mitchell v. New York City Dep't of Educ.*, No. 24-992, 2025 WL 978366, at *2 n.5 (2d Cir. Mar. 31, 2025) ("Like the district court, we construe [the plaintiff's] claims brought under 42 U.S.C. § 1981 to be claims brought under 42 U.S.C. § 1983[.]"); *Collymore v. City of New York*, 767 F. App'x 42, 45 (2d Cir. 2019) ("[T]he

---

[4] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

district court properly construed [the plaintiff's] Section 1981 claims as Section 1983 claims[.]").
This branch of Defendants' motion to dismiss is denied.

II.    <u>Statute of Limitations</u>

Plaintiff alleges that he suffered various forms discrimination and retaliation on the basis
of his race, gender, and national origin from as early as May 2018 to around May 2024. (SAC ¶¶
37, 184). Defendants argue that Plaintiff's Title VII, Section 1983, and NYSHRL claims are time
barred in whole or in part. (Def. Br. at 12-14). Although the statute of limitations is ordinarily
asserted as an affirmative defense, the Second Circuit permits such defense to be raised on a Rule
12(b)(6) motion provided "the defense appears on the face of the complaint." *McKenna v. Wright*,
386 F.3d 432, 436 (2d Cir. 2004); *DiBenedetto v. Coley*, No. 22-CV-05926, 2024 WL 1216703,
at *4 (S.D.N.Y. Mar. 21, 2024) (granting a motion to dismiss and dismissing claims as
time-barred).

The Court, having carefully reviewed this argument, has determined that none of Plaintiff's
claims will be dismissed on statute of limitations grounds at this juncture. Plaintiff has sufficiently
pleaded allegations within the respective limitations periods for each of his claims for relief; and
to the extent that Plaintiff has pled allegations outside of the statute of limitations, it is
well-established that the Court may consider those allegations as background and context for
actionable allegations. *See Tenemille v. Town of Ramapo*, No. 18-CV-00724, 2020 WL 5731964,
at *8 (S.D.N.Y. Sept. 24, 2020); *Imperato v. Otsego Cnty. Sheriff's Dep't*, No. 13-CV-01594, 2016
WL 1466545, at *14 (N.D.N.Y. Apr. 14, 2016); *Magadia v. Napolitano*, No. 06-CV-14386, 2009
WL 510739, at *11 (S.D.N.Y. Feb. 26, 2009). Moreover, Defendants appear to concede that to the
extent that Plaintiff has plausibly alleged his hostile work environment claims—which the Court
herein holds that he has—all allegations with respect to those claims could be considered under

the continuing violation doctrine. (*See* Def. Br. at 12-14 (seeking dismissal on statute of limitations grounds only Plaintiff's disparate treatment and retaliation claims); Reply at 6 (arguing that "plaintiff's allegations do not plausibly allege a hostile work environment . . . [and] therefore [he] cannot rely on his nonviable hostile work environment claims to bring his many time-barred allegations within the statute of limitations")).

Accordingly, Defendants' motion to dismiss Plaintiff's claims on statute of limitations grounds is denied at this juncture.

III.    Claims for Relief

A. Disparate Treatment Claims

Plaintiff's first, third, fourth, and sixth claims for relief—proceeding under Title VII, Section 1983, the NYSHRL, and Section 1981, respectively—allege that he was subject to discriminatory disparate treatment. (SAC ¶¶ 190-192, 215-223, 227-231). Title VII makes it unlawful for employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1)). Claims under Title VII, Section 1981, and Section 1983 are all subject to the burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) ("[The plaintiff's] disparate treatment claim under Title VII, § 1981, and § 1983 is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*.").

At the motion to dismiss stage, only the first step—the plaintiff's burden to allege a prima facie case of discrimination—is at issue. *See id.* at 311. "To establish a prima facie case of discrimination under Title VII . . . a plaintiff must allege that (1) []he is a member of a protected

class; (2) []he is qualified for the position held; (3) []he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Malloy v. Pompeo*, No. 18-CV-04756, 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020). At the motion to dismiss stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84. "A common and especially effective method of establishing a prima facie case of discrimination" is "showing that the employer treated a similarly situated employee differently." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001).

Defendants only challenge the third and fourth elements. (Def. Br. at 20-27).

### i.  Adverse Employment Action

With respect to federal discrimination claims, the Supreme Court has recently clarified that adverse employment action is a decision that "brought about some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024); *see Anderson v. Amazon.com, Inc.*, No. 23-CV-08347, 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024) (applying the *Muldrow* standard to claims under Title VII and Section 1981). Put differently, the employment decision must "leave [a plaintiff] worse off respecting employment terms or conditions." *Id.* A plaintiff need not show "the harm incurred was significant[] [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Back v. Hapoalim*, No. 24-1064-CV, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (alteration in the original).

Defendants argue that Plaintiff failed to identify any adverse action. (Def. Br. at 20-24). The Court disagrees. To that end, Plaintiff alleges that he was assigned a disproportionately heavy workload as compared to his female, non-Black colleagues. In particular, Plaintiff alleges that

during multiple school years, including the 2020-2021 school year, he was assigned five class periods, two grade levels, and two college courses, affecting his ability to perform his job duties and his health. (SAC ¶¶ 14, 32-34, 84, 108-109). None of his female, non-Black colleagues were assigned a comparable class load. (*Id.*). Courts within this Circuit have held that similar allegations suffice to plead an adverse action. *See, e.g.*, *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 451 (S.D.N.Y. 2023) ("Because Plaintiff has pled that her schedule resulted in a disproportionately heavy workload as compared to her non-Black colleagues . . . she has sufficiently alleged an adverse action."); *Kunik v. New York City Dep't of Educ.*, No. 15-CV-09512, 2017 WL 4358764, at *9 (S.D.N.Y. Sept. 29, 2017) ("[The plaintiff's] allegations, including that she received a heavier workload than her comparators, meets the 'minimal' bar necessary to plead an adverse employment action at the pleadings stage."); *see also Joseph v. Brooklyn Developmental Disabilities Servs. Off.*, No. 12-CV-04402, 2016 WL 6700831, at *20 (E.D.N.Y. Sept. 30, 2016) ("'[T]he assignment of a disproportionately heavy workload,' in itself, may constitute an adverse action." (alteration in the original; quoting *Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004))).

Defendants seek to address these well-pled allegations by pointing to the collective bargaining agreement ("CBA") between YPS and Plaintiff's union. (Def. Br. at 16). The CBA, which Defendants argue the Court may consider as "integral" to the Second Amended Complaint, purportedly "permits assigning five instructional periods . . . per day." (*Id.* & n.4). As such, Plaintiff's allegations, Defendants continue, "cannot plausibly be deemed 'disproportionately burdensome'" (*Id.*). This argument fails to persuade. To start, the CBA is not integral to the Second Amended Complaint. Contrary to Defendants' assertion, Plaintiff does not rely heavily on the CBA; nor does it form the basis for any of his claims for relief. *See 170 Mercer LLC v. Rialto Cap.*

*Advisors, LLC*, No. 20-CV-02496, 2021 WL 1163649, at *3 (S.D.N.Y. Mar. 25, 2021) ("A document is integral to a complaint only when a complaint relies on it; that is, when it provides the basis for the plaintiff's claims or underlies the plaintiff's factual allegations."). At most, the CBA is relevant evidence to Plaintiff's claims. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").[5] Moreover, even if the Court were to consider the CBA, the Court's holding would not change because Plaintiff has alleged sufficiently to withstand the motion to dismiss that he was consistently assigned a disproportionately heavy workload as compared to his female, non-Black colleagues, subject to the same CBA provisions. *Cf. Castro v. Mitchell*, No. 09-CV-03754, 2011 WL 10901797, at *5 (S.D.N.Y. Aug. 25, 2011) (holding on a summary judgment motion that the plaintiff had established an adverse employment action because, in part, his "testimony indicate[d] that even where specific tasks fell within his general job requirements, he was consistently assigned disproportionately more of these tasks than his coworker"). Although Defendants may ultimately be able to show that Plaintiff did not receive a disproportionately heavy workload, this question should not be resolved at the pleadings stage.

Plaintiff's allegations concerning (1) being denied promotional opportunities to positions for which he allegedly possessed the requisite qualifications—including to the ELA Department Chair, an Assistant Principal position, Director of MBK, and the Title I Executive Director position; (2) being denied training that allegedly impacted Plaintiff's opportunity for promotion;

---

[5] Similarly, Defendants' arguments about Plaintiff's § 50-h examination, his email exchange regarding returning from his leave of absence, and the "license" required to be an Assistant Principal (Def. Br. at 21-22) are better suited for a summary judgment motion. As such, the Court declines to address these arguments at this stage. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* No. 12-CV-03723, 2016 WL 5719749, at *5 n.3 (S.D.N.Y. Sept. 29, 2016).

and (3) involuntarily being placed on sick leave also suffice to show adverse employment action at this stage. (SAC ¶¶ 86-87, 95, 99, 111-112, 124, 149, 165-168). *See Hayes v. G&E Real Est. Mgmt. Servs.*, No. 24-CV-01459, 2025 WL 769162, at *9 (S.D.N.Y. Mar. 11, 2025) ("[The plaintiff] is correct that the failure to promote is an adverse employment action." (citing *Treglia v. Town of Manilus*, 313 F.3d 713, 720 (2d Cir. 2002) ("[D]iscriminatory failure to promote falls within the core activities encompassed by the term adverse actions.")); *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) ("[T]he denial of professional training opportunities may constitute an adverse employment action . . . where an employee can show material harm from the denial, such as a failure to promote or a loss of career advancement opportunities."); *Valerio v. City of New York*, No. 18-CV-11130, 2020 WL 353749, at *5 (S.D.N.Y. Jan. 21, 2020) (holding that the plaintiff's allegations that he was "involuntarily placed on leave" constituted an adverse employment action); *Wagner v. Cnty. of Nassau*, No. 11-CV-01613, 2014 WL 3489747, at *9 (E.D.N.Y. July 11, 2014) ("[I]nvoluntary leave or unjustified charging of sick days can be a sufficient adverse action.").[6]

On the other hand, Plaintiff's allegations concerning assignments to "shit duty" as well as suffering "belittl[ing]" comments from his peers and unfair "discipline[]"are not actionable. (Pl. Br. at 24; *see also, e.g.*, SAC ¶¶ 68, 114, 116, 163). None of these acts left Plaintiff worse off respecting his employment terms or conditions. *See Satina v. City of New York*, No. 24-CV-01842, 2025 WL 902893, at *5 (S.D.N.Y. Mar. 25, 2025) (explaining that "[c]riticism of an employee" as well as "embarrass[ing], demean[ing], intimidat[ing], and excessively scrutiniz[ing] an employee are [] not adverse employment actions"); *Wilson v. Connecticut Dep't of Transportation*,

---

[6] The Court notes that these acts, as well as Plaintiff's disproportionately heavy workload, would also suffice to plead adverse employment action under the more stringent pre-*Muldrow* test.

706 F. Supp. 3d 327, 343 (D. Conn. 2023) (explaining that "less desirable" work assignments "do not rise to the level of an adverse employment action"); *Williams v. New York City Hous. Auth.*, 335 F. App'x 108, 110 (2d Cir. 2009) ("Neither [the defendant's] denial of [the plaintiff's] request for a leave of absence, nor its deduction of a small amount from her salary, nor its issuance of two counseling memoranda constituted an adverse employment action.").[7]

### ii. Inference of Discrimination

"A plaintiff can show circumstances giving rise to an inference of discrimination in a variety of ways, including 'by relying on the theory of disparate treatment; that is, by showing that [his] employer treated [him] less favorably than a similarly situated employee outside [his] protected group.'" *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014) (alteration in the original; quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 100 (S.D.N.Y. 2012)).

Here, Plaintiff seeks to demonstrate an inference of discrimination by pleading that he was treated less favorably than similarly situated employees. He alleges, among other things, that female, non-Black teachers received materially lighter class loads and trainings that were denied to him. (*See, e.g.*, SAC ¶¶ 108-109, 111-112). Plaintiff's Second Complaint identifies these "similarly situated" teachers' names and positions. (*Id.* ¶ 16; *see also* Doc. 22-2). His comparators were also in his educational department at Gorton High School. (SAC ¶¶ 2, 16). Such allegations, in this posture, suffice to plead a plausible inference of discrimination based on disparate treatment. *See Sampson v. Int'l Union of Operating Eng'rs Loc. 14-14B*, No. 22-CV-03588, 2023 WL 8530116, at *4 (E.D.N.Y. July 10, 2023) ("Plaintiff's allegations, sparce [sic] though they

---

[7] Nor are Plaintiff's disability-based allegations (*e.g.*, SAC ¶ 179) actionable. *See Milner-Koonce v. Albany City Sch. Dist.*, No. 21-CV-01271, 2022 WL 1500995, at *8 (N.D.N.Y. May 12, 2022) ("A Title VII claim is not actionable on the basis of disability discrimination."), *adopted as modified by*, 2022 WL 2339443 (N.D.N.Y. June 29, 2022); *Bonds v. Cnty. of Westchester*, No. 19-CV-01712, 2020 WL 4347704, at *8 (S.D.N.Y. July 28, 2020) (same for claims under Section 1983).

may be, show that he shares a reasonably close resemblance with White Operating Engineers who also operate heavy equipment in the construction industry in New York City."); *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014) (holding that the plaintiff's allegations "that he had to work more than other hall directors" sufficed to plead an inference of discriminatory intent, despite "the Complaint [being] sparse on specifics with respect to how his colleagues are similarly situated to him"); *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 471 (S.D.N.Y. 2013) ("[The plaintiff's] allegations are thin on specifics—both as to how each comparator is similarly situated to [the plaintiff] and what disparate treatment he or she was subjected to. However, the Court finds that [he has] . . . pled sufficient facts to give rise to a plausible inference of discrimination based on disparate treatment."); *Gahfi v. New York City Dep't of Educ.*, No. 23-CV-01782, 2025 WL 675933, at *6 (E.D.N.Y. Feb. 28, 2025) (explaining that "a series of instances of disparate treatment in the workplace" is "sufficient to support a plausible inference of intentional discrimination").

Accordingly, Defendants' motion to dismiss Plaintiff's federal disparate treatment claims is denied. "Because Title VII acts as a 'floor' for the NYSHRL, this ruling means that the [S]AC's identical claim under state law also necessarily survives." *Doyle v. Am. Glory Rest. Corp.*, No. 23-CV-07624, 2024 WL 1466161, at *7 (S.D.N.Y. Apr. 4, 2024) (citation omitted); *accord Eur. v. Equinox Holdings, Inc.*, No. 20-CV-07787, 2022 WL 4124763, at *7 n.11 (S.D.N.Y. Sept. 9, 2022) (explaining that discrimination claims that survive the more stringent federal standard will by extension survive the more "liberal pleading and proof standards" under New York state law).[8]

---

[8] In August 2019, the New York state legislature amended the NYSHRL, effective October 11, 2019, "to make the standard for NYSHRL claims closer to the more liberal standard of the New York City Human Rights Law ('NYCHRL')." *Brikman v. Westchester Med. Ctr. Advanced Physician Servs., P.C.*, No. 23-CV-10749, 2025 WL 2371315, at *9 (S.D.N.Y. Aug. 13, 2025). Since this amendment, however, courts within this Circuit have not yet formed a consensus about whether the new NYSHRL standard is identical

B.  Hostile Work Environment Claims

Plaintiff's first and fourth claims for relief—proceeding under Title VII and NYSHRL—allege that he was subject to a hostile work environment. (SAC ¶¶ 190-192, 221-223). To state a hostile work environment claim under Title VII, a plaintiff must allege: "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (alterations in original)).

The harassing conduct must be caused by the plaintiff's "membership in a protected class," *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999), and the test "has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Thomson v. Odyssey House*, No. 14-CV-03857, 2015 WL 5561209, at *13 (E.D.N.Y. Sept. 21, 2015) (quoting *Littlejohn*, 795 F.3d at 321), *aff'd*, 652 F. App'x 44 (2d Cir. 2016). While a single severe incident may suffice, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted). The focus is on the totality of the circumstances. *Smith v. Westchester*

---

to that of the NYCHRL or merely "closer to it." *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023). "Because the Court finds that [Plaintiff] has pled enough to state a claim under the higher standards" of Title VII for his disparate treatment claims—and indeed, as discussed *infra*, all his discrimination and retaliation claims—the Court need not and does not weigh in on the "exact demands of the NYSHRL as amended." *Doyle*, 2024 WL 1466161, at *7.

*Cnty. Dep't of Corr.*, No. 12-CV-03941, 2014 WL 4384104, at *9 (S.D.N.Y. Sept. 3, 2014). A

totality-of-the-circumstances evaluation means that courts examine:

> frequency of the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive utterance;
> and whether it unreasonably interferes with the victim's [job]
> performance.

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Hayut*

*v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (alterations in original)). Thus, "a plaintiff

need only plead facts sufficient to support the conclusion that []he was faced with harassment . . .

of such quality or quantity that a reasonable employee would find the conditions of h[is]

employment altered for the worse." *Jeanty v. Precision Pipeline Sols., LLC*, No. 18-CV-07721,

2019 WL 3532157, at *4 (S.D.N.Y. Aug. 2, 2019) (quoting *Patane v. Clark*, 508 F.3d 106, 113

(2d Cir. 2007) (internal quotation marks omitted)). Importantly, "[h]ostile work environment

claims are meant to protect individuals from abuse and trauma that is severe . . . not . . . to promote

or enforce civility, gentility or even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591

(S.D.N.Y. 2018) (quotation marks and citation omitted). Thus, "excessive criticism and rudeness

do not constitute a hostile work environment." *Ramirez v. Temin & Co.*, No. 20-CV-06258, 2021

WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021).

Defendants argue that Plaintiff fails to plead "pervasive abuse required to state a hostile

work environment claim." (Def. Br. at 14). Yet as discussed *supra*, Plaintiff sufficiently pleads

that he was subject to a disproportionate workload on the basis of his race and gender. These

allegations by Plaintiff are sufficient to plead objectively severe or pervasive conduct to maintain

his hostile work environment. *See Sanderson v. Leg Apparel LLC*, No. 19-CV-08423, 2020 WL

3100256, at *8 (S.D.N.Y. June 11, 2020) (holding that the plaintiff's "allegations are adequate to

plead that he was subjected to objectively severe or pervasive conduct" because "[m]ost

importantly, [he] alleged that he was assigned a disproportionate workload because of his race");
*Kirkland-Hudson*, 665 F. Supp. 3d at 466 (similar and collecting cases).

Moreover, Plaintiff separately alleges that he suffered derogatory statements and acts
directed to him by students, staff, and unknown perpetrators at the school because of his race and
gender—including (1) a student stating "I hate black people" and physically assaulting him; (2) an
unknown individual or individuals placing a racially demeaning image of a monkey on his desk;
(3) an unknown individual or individuals "toss[ing]," "st[ealing]," and "destroy[ing]" his teaching
materials and personal items; and (4) members of the YPS's "staff" emailing Plaintiff four
messages containing "disturbing and degrading gay pornography depicting Black men." (SAC ¶¶
125, 129-130, 161). Defendants respond with two arguments. First, Defendants argue that these
incidents were too "isolated" and temporally separated to suffice to state a hostile work
environment claim. (Def. Br. at 18). But these incidents cannot be viewed in isolation; the Cout
must focus on the totality of the circumstances. *See Smith*, No. 2014 WL 4384104, at *9. These
actions—when combined with Plaintiff's disproportionate workload—satisfy Plaintiff's burden of
pleading that he was subjected to an objectively hostile work environment. *Cf. Sanderson*, 2020
WL 3100256, at *8 ("Standing alone, these allegations might fail to plead that a plaintiff was
subjected to an objectively hostile work environment. But together with the allegations that he was
assigned a disproportionately heavy workload, [the plaintiff] has pleaded that he faced an
objectively hostile work environment."); *see also Patane v. Clark*, 508 F.3d 106, 114 (2d Cir.
2007) (explaining that "whether a particular work environment is objectively hostile is necessarily
a fact-intensive inquiry").

Second, Defendants argue that Plaintiff cannot impute any of these acts to YPS. (Def. Br.
at 19). Courts in this Circuit have held, however, that student-on-teacher harassment may form the

basis for a hostile environment claim where a plaintiff shows "[1] [a] hostile environment existed and [2] that the school board either provided no reasonable avenue of complaint or knew of the harassment and failed to take appropriate remedial action." *E.g.*, *Berger-Rothberg v. City of New York*, 803 F. Supp. 2d 155, 164–65 (E.D.N.Y. 2011); *Ringel v. New York City Dep't of Educ.*, 616 F. Supp. 3d 205, 228 (E.D.N.Y. 2022) (collecting cases). Plaintiff has satisfied that burden at this juncture: Plaintiff has pled, when looking at the totality of circumstances, that a hostile environment existed; and he alleged that Defendants took no action despite their knowledge of these incidents. (SAC ¶¶ 129, 162). Likewise, to the extent that these harassing acts were carried out by Plaintiff's co-workers, the Court may impute responsibility to YPS for purposes of this motion. "When a co-worker without supervisory authority harasses a plaintiff, 'liability will be imputed to the employer only if it is negligent, that is, if it . . . knew of the harassment but did nothing about it.'" *Little v. R & L Carriers, Inc.*, No. 24-CV-00836, 2025 WL 744276, at *12 (D. Conn. Mar. 9, 2025) (alteration in the original; quoting *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001)); *accord Equal Emp. Opportunity Comm'n v. 98 Starr Rd. Operating Co., LLC*, 682 F. Supp. 3d 414, 423 (D. Vt. 2023) ("It is well-established that employers may be held liable for harassment by third parties when that conduct creates a hostile work environment, and the employer knew or reasonably should have known about the harassment and failed to take reasonable remedial action." (cleaned up and collecting cases)). Plaintiff alleges that YPS was aware of the discriminatory harassment and took no action. (SAC ¶¶ 125-126, 129, 132, 162).

Accordingly, Defendants' motion to dismiss Plaintiff's federal hostile work environment claims is denied. As Title VII acts as a "floor" for the NYSHRL, Defendants' motion to dismiss Plaintiff's NYSHRL work environment claims is also denied. *See Doyle*, 2024 WL 1466161, at *7; *Eur.*, 2022 WL 4124763, at *9.

C.  Retaliation Claims

Plaintiff's second, fifth, and seventh claims for relief—proceeding under Title VII, the NYSHRL, and Section 1981, respectively—allege that he suffered retaliation for engaging in protected activity. (SAC ¶¶ 212-214, 224-226, 232-242). To state a claim for Title VII retaliation, Plaintiff must allege "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). The same standard applies to claims brought under Section 1981 and Section 1983. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) ("Retaliation claims brought under . . . § 1981 are subject to the same standards as federal claims under Title VII."); *Lewis v. City of Norwalk*, 562 F. App'x 25, 29 (2d Cir. 2014) (summary order) (analyzing Title VII and § 1983 retaliation claims under the same framework).

Defendants argue that Plaintiff failed to sufficiently plead any of the elements of his retaliation claims. (Def. Br. at 27-30). As discussed *supra*, however, the Court holds that Plaintiff has adequately pled that he was subject to an adverse employment action, even under the more stringent pre-*Muldrow* test.[9]

With respect to the protected activity portion of the test, a "plaintiff engages in protected activity when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Ramirez v. Michael Cetta Inc.*, No. 19-CV-00986, 2020 WL 5819551, at *19 (S.D.N.Y. Sept.

---

[9] The Second Circuit has noted that *Muldrow* did not change the adverse employment action test for retaliation claims. *See Khazin v. City of New York*, No. 24-1236-CV, 2025 WL 1091241, at *2 (2d Cir. Apr. 8, 2025) (analyzing the alleged adverse employment actions by the defendants under the "materially adverse" standard for the plaintiff's retaliation claim).

30, 2020). At the motion to dismiss stage, the plaintiff's burden is "de minimis." *Dipinto v. Westchester Cnty.*, No. 18-CV-00793, 2019 WL 4142493, at *8 (S.D.N.Y. Aug. 30, 2019) (quoting *Treglia*, 313 F.3d at 719). Here, Plaintiff alleges, among other things, that he made complaints about race and gender discrimination: (1) during a February 24, 2021 meeting; (2) in a survey connected to the nomination of the next ELA Chair that Mr. Shaggura read; and (3) in an internal discrimination complaint against Superintendent Quezada. (SAC ¶¶ 86-89, 132). Construing the allegations in Plaintiff's favor, he has easily cleared his burden of pleading that he engaged in protected activity of which Defendants had notice. *See Sollazzo v. Rest.*, No. 15-CV-00252, 2016 WL 1071031, at *11 (S.D.N.Y. Mar. 17, 2016) ("[T]he Second Circuit has recognized that a protected activity includes . . . 'informal protests of discriminatory employment practices, including making complaints to management.'" (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990))); *Roman v. Cornell Univ.*, 53 F. Supp. 2d 223, 245 (N.D.N.Y. 1999) ("Drawing all reasonable inferences in plaintiff's favor, the Court concludes that these instances are sufficient to satisfy her *de minimis* burden of demonstrating that she engaged in protected activity.").

Defendants fare no better with their causation argument. Plaintiff sufficiently alleges, in this posture, that the adverse employment actions occurred temporally close to his protected activity. For instance, Plaintiff was denied the position of Title I Executive Director around three months, and the position of ELA Chair around four months, after his February 24, 2021 meeting with Mr. Shaggura in which Plaintiff allegedly shared that he was experiencing race and gender bias. (SAC ¶¶ 86-87, 89-90, 95, 99). Likewise, Plaintiff was informed that he would be placed on involuntary sick leave to start the 2023-2024 school year around three months after his May 2023 internal discrimination complaint. (*Id.* ¶¶ 132, 149, 171). Courts within this Circuit have held that

21

up to "[f]ive-and-a-half months is not outside the bounds of what the Circuit has found sufficient to allege a causal connection between protected activity and an adverse employment action." *Kekovic v. Titan Motor Grp. LLC*, No. 22-CV-02142, 2023 WL 6385712, at *10 (E.D.N.Y. Sept. 29, 2023) (collecting cases). As such, the Court finds that Plaintiff has met his *de minimis* burden to allege causation.[10]

Accordingly, Defendants' motion to dismiss Plaintiff's federal retaliation claims is denied. "Given that the Court found Plaintiff plausibly pled a retaliation claim in violation of the standards under Title VII, . . . for the purposes of this motion, Plaintiff has plausibly pled a claim for retaliation under . . . NYSHRL standards as well." *Brikman, P.C.*, 2025 WL 2371315, at *10 n.10.

IV.    Personal Involvement by Dr. Quezada

Finally, Defendants argue that Plaintiff failed to plead the personal involvement of Dr. Quezada in any of the alleged discriminatory actions under Section 1983, and thus, Plaintiff's third claim for relief against Dr. Quezada must be dismissed. (Def. Br. at 30-32 (seeking dismissal of "the §1983 cause of action against Dr. Quezada")).[11] "As a fundamental prerequisite, 'to establish

---

[10] The Court notes that its examples *supra* of adverse employment actions, objectively severe or pervasive conduct, protected activities, and adverse actions occurring temporally close to the protected activities are non-exhaustive. As Plaintiff has pled sufficient allegations for each one of his claims for relief, the Court will not, at this stage, parse and list every actionable allegation in the Second Amended Complaint.

[11] The parties also discuss in their briefs whether Plaintiff's allegations about Dr. Quezada suffice to establish *Monell* liability. (Def. Br. at 30 n.10; Pl. Br. at 31-32). That argument, however, is not properly raised and thus will not be considered on this motion. First, Defendants only seek to dismiss Plaintiff's Section 1983 claims against Dr. Quezada, and, as Defendants themselves acknowledge, Plaintiff's Section 1983 claims are pressed against the "INDIVIDUAL DEFENDANTS ONLY." (SAC at 35). Second, and more importantly, Defendants confine their arguments about *Monell* liability in their opening brief to a footnote. (Def. Br. at 30 n.10); *see Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 314 (S.D.N.Y. 2015) (collecting cases and explaining "because the arguments appear only in footnotes, they are not properly raised, and the Court is under no obligation to consider them"); *Sec. & Exch. Comm'n v. Allaire*, No. 03-CV-04087, 2019 WL 6114484, at *3 n.1 (S.D.N.Y. Nov. 18, 2019) ("An argument mentioned only in a footnote is not adequately raised and need not be considered." (citing *Niagra Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012))). Accordingly, to the extent that Defendants seek to dismiss Plaintiff's Section 1981 claims against YPS, that branch of Defendants' motion is denied as improperly raised.

a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation.'" *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *4 (S.D.N.Y. Mar. 22, 2021) (quoting *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017)). "Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint 'fatally defective on its face.'" *Id.* (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987)). To show personal involvement, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

Plaintiff, in opposing Defendants' motion, primarily relies on his allegations that Dr. Quezada "ignored" Plaintiff's formal and informal complaints. (Pl. Br. at 31; *see* SAC ¶¶ 56-57, 111-113, 121, 126-127). But "the fact that an official ignored" complaints about alleged unconstitutional conduct "is not enough to establish personal involvement." *Booker v. Chappius*, No. 17-CV-00320, 2019 WL 13390449, at *4 (W.D.N.Y. July 8, 2019) (quoting *Thomas v. Coombe*, No. 95-CV-10342, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998)); *see also Arnold v. Town of Camillus, New York*, 662 F. Supp. 3d 245, 264 (N.D.N.Y. 2023) (holding that the plaintiff failed to adequately allege personal involve where she "simply allege[d] that she made [the supervisor d]efendant [] aware of the alleged sexual harassment and denial of opportunities and that he failed to take appropriate corrective action"). Nor does Plaintiff's allegation that "Superintendent Quezada/HR" denied his "Emergency Leave Benefit application" (SAC ¶ 133) suffice to plead personal involvement. This allegation—lumping Dr. Quezada in with "HR"—is a prototypical form of "group pleading," which courts within this Circuit have repeatedly held fails to establish personal involvement. *See, e.g.*, *Gonzalez v. Yepes*, No. 19-CV-00267, 2019 WL

2603533, at *7 (D. Conn. June 25, 2019) ("As a corollary of the personal involvement requirement, complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim."); *Leneau v. Ponte*, No. 16-CV-00776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("[C]omplaints [alleging Section 1983 liability] that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.").

Accordingly, Defendants' motion to dismiss the third claim for relief against Dr. Quezada for lack of personal involvement is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion to dismiss the third claim for relief against Defendant Dr. Quezada is granted. Defendants' motion is denied in all other respects.

Defendants are directed to file an answer to the Second Amended Complaint within 14 days of the date of this Order. The Court will separately docket a Notice of Initial Conference.

The Clerk of Court is respectfully requested to terminate the pending motion at Doc. 27.

**SO ORDERED.**

Dated:   White Plains, New York
         September 19, 2025

_____
PHILIP M. HALPERN
United States District Judge